FILED

2015 Jul-24  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **REBECCA VAUGHN**, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:15-CV-835-VEH** |
| | ) |
| **JACKSONVILLE STATE** | ) |
| **UNIVERSITY, WILLIAM A.** | ) |
| **MEEHAN, President, in his Official** | ) |
| **Capacity; JOE G. DELAP, Vice** | ) |
| **Provost and Dean of Graduate** | ) |
| **Studies, in his Official Capacity;** | ) |
| **REBECCA O. TURNER, Provost, in** | ) |
| **her Official Capacity; and** | ) |
| **TIMOTHY B. KING, Title IX** | ) |
| **Coordinator, in his Official** | ) |
| **Capacity,** | ) |
| | ) |
| **Defendants**. | ) |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.    Introduction

Plaintiff Rebecca Vaughn ("Ms. Vaughn") initiated this Title IX and Equal

Protection/§ 1983 lawsuit against Defendants Jacksonville State University ("JSU"),

William A. Meehan, Joe G. Delap, Rebecca O. Turner, and Timothy B. King on May

20, 2015.[1] (Doc. 1). Pending before the court is Defendants' Motion to Dismiss (Doc. 6) (the "Motion") filed on June 19, 2014, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On this same date, Defendants filed their supporting brief. (Doc. 7).

Ms. Vaughn filed her opposition (Doc. 12) to the Motion on July 14, 2015. On July 20, 2015, Defendants followed with their reply. (Doc. 13). Accordingly, the Motion is now under submission, and, for the reasons explained below, is **GRANTED IN PART**, **DENIED IN PART**, and otherwise **TERMED** as **MOOT**.

## II.    Standard(s)

### A.    Rule 12(b)(1) Generally

Unlike state courts, federal tribunals are bodies of limited jurisdiction, meaning that the grounds for the court's jurisdiction over the claims asserted by the plaintiff must be present at the time the complaint is filed and must be obvious on the face of the complaint. Fed. R. Civ. P. 8(a); 28 U.S.C. § 1330, *et seq.* The law is clear that Ms. Smith, the person seeking to invoke federal jurisdiction in this case, has the burden to demonstrate that the court has subject matter jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135

---

[1] As her case caption and party allegations indicate, Ms. Vaughn has sued all the individual defendants in their official capacities only. (Doc. 7 at 1; *id.* at 3-4 ¶¶ 9-12).

2

(1936) ("They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor . . . . [and a]s he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court.").

Further, lack of subject matter jurisdiction cannot be waived or expanded by judicial interpretation, and a jurisdictional deficiency can be raised at any time by either the parties or the court. *See, e.g., Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18, 71 S. Ct. 534, 542,  95 L. Ed. 702 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties."); *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S. Ct. 553, 557, 42 L. Ed. 2d 532 (1975) ("While the parties may be permitted to waive nonjurisdictional defects, they may not by stipulation invoke the judicial power of the United States in litigation which does not present an actual 'case or controversy,' and . . . we feel obliged to address the question of mootness before reaching the merits of appellant's claim.") (citation omitted).

### 1.    Standing

"'[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (citations omitted). "'In essence the question

of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Bochese*, 405 F.3d at 974 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir. 2004) (in turn quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975))). "Standing is a doctrine that 'stems directly from Article III's "case or controversy" requirement,' and thus it 'implicates our subject matter jurisdiction.'" *Bochese*, 405 F.3d at 974 (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003) (in turn citing *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 1861-62, 146 L. Ed. 2d 836 (2000))). "In fact, standing is 'perhaps the most important' jurisdictional doctrine, and, as with any jurisdictional requisite, [the court is] powerless to hear a case when it is lacking." *Bochese*, 405 F.3d at 974 (quoting *Bischoff v. Osceola County*, 222 F.3d 874, 877-78 (11th Cir. 2000) (in turn quoting *United States v. Hays*, 515 U.S. 737, 742, 115 S. Ct. 2431, 2435, 132 L. Ed. 2d 635 (1995))).

### 2.   Mootness

As the Eleventh Circuit has explained the doctrine of mootness:

> It is well settled that at the time a plaintiff brings suit he must have standing to prosecute his claim; he must have a "personal stake" in the outcome of the litigation. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396-97, 100 S. Ct.

> 1202, 1208-09, 63 L. Ed. 2d 479 (1980). The mootness doctrine requires
> that the plaintiff's controversy remain live throughout the litigation; once
> the controversy ceases to exist, the court must dismiss the cause for want
> of jurisdiction. *See, e.g., Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227,
> 239-40, 57 S. Ct. 461, 463–64, 81 L. Ed. 617 (1937); *Church of
> Scientology Flag Serv. Org. v. City of Clearwater*, 777 F.2d 598, 604
> (11th Cir. 1985), *cert. denied*, 476 U.S. 1116, 106 S. Ct. 1973, 90 L. Ed.
> 2d 656 (1986). . . . If the plaintiff's claim is not live, the court lacks a
> justiciable controversy and must dismiss the claim as moot. *See
> Geraghty*, 445 U.S. at 404 & n.11, 100 S. Ct. at 1213 & n.11.

*Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987); *see also Castorela v. Mellon*, 754 F. Supp. 191, 192 (M.D. Fla. 1990) ("The mootness doctrine requires that a live controversy must exist at the case beginning of the litigation and must remain alive throughout the litigation.").

### B.      Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955,

1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line

6

from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## III.    Analysis

### A.    Ms. Vaughn's Allegations and Claims

Ms. Vaughn's lawsuit challenges Defendants' efforts to remove her from JSU's Master of Science Program (the "Program"). Ms. Vaughn first enrolled in the Program during the Fall 2008 semester. (Doc. 1 at 6 ¶ 22). After withdrawing because of a pregnancy, she returned to the Program in May 2010. (*Id.* ¶ 23). On October 13, 2012, JSU notified her of its intent to remove her from the Program. *Id.*

Ms. Vaughn objected to this action and, at an appeal hearing held on November 27, 2012, she presented to JSU's Admissions Committee (the "Committee") the reasons justifying her continued enrollment in the Program. (Doc. 1 at 7 ¶ 26). In a letter dated December 4, 2012, the Committee informed Ms. Vaughn that it had rescinded the decision to remove her from the Program subject to a list of certain

conditions that she would be required to fulfill. (Doc. 1 at 7 ¶ 26).

On July 15, 2013, Ms. Vaughn filed a complaint with Defendant Timothy King, JSU's Title IX Coordinator. (Doc. 1 at 7 ¶ 27). During the time period of the Title IX Coordinator's investigation, Ms. Vaughn ultimately completed the Program, obtaining her M.S. degree from JSU on August 2, 2013. (Doc. 1 at 8 ¶ 28); (*see also* Doc. 12 at 5 (acknowledging that Ms. Vaughn "is no longer a student at JSU")).

In the first count of her complaint, Ms. Vaughn maintains that her dismissal from the Program was improperly based upon sex in violation of Title IX. (Doc. 1 at 15-16 ¶¶ 60-64). Section 901 of Title IX provides in part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ....

20 U.S.C. § 1681(a). Ms. Vaughn also asserts that Defendants violated Title IX by retaliating against her after she complained about her alleged mistreatment under the Program. (Doc. 1 at 15-16 ¶¶ 60-64).

In addition to her Title IX claims, Ms. Vaughn brings a § 1983 count for Equal Protection violations against all the individual defendants. (Doc. 1 at 16-17 ¶¶ 65-68). At the end of her complaint, she collectively seeks equitable relief as well as compensatory damages for both her Title IX and § 1983 counts. (Doc. 1 at 17-18 ¶¶

A-D).

Defendants have raised numerous grounds in support of their Motion. The court addresses the viability of Ms. Vaughn's § 1983 count first.

**B.      Sovereign Immunity and Mootness Require a Dismissal of Ms. Vaughn's § 1983 Count.**

Sovereign or Eleventh Amendment immunity bars suits brought by private plaintiffs "seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974). Concerning equitable orders, while "the Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief, [it does] bar[] suits seeking retrospective relief such as restitution or damages." *Florida Ass'n of Rehabilitation Facilities, Inc. v. Fla. Dept. of Health and Rehabilitative Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000); *see also id.* ("Under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), there is a long and well-recognized exception to this rule for suits against state officers seeking prospective equitable relief to end continuing violations of federal law.").

Ms. Vaughn does not dispute and, the court agrees with Defendants, that JSU constitutes a state agency for sovereign immunity purposes and further that the

individual defendants, who have been sued in their official capacities, are similarly entitled to sovereign immunity "because a claim against a state official . . . is functionally equivalent to a claim against the state agency." (Doc. 7 at 5); *see, e.g., Harden v. Adams*, 760 F.2d 1158, 1164-65 (11th Cir. 1985) (upholding district court's summary judgment decision in favor of Troy State University and individual defendants sued in their official capacities on sovereign immunity grounds). Pursuant to this shield of sovereign immunity, Ms. Vaughn's efforts to obtain monetary damages premised upon any Equal Protection violations are undoubtedly barred by the Eleventh Amendment and are **HEREBY DISMISSED WITHOUT PREJUDICE**. *See Bennett v. United States*, 102 F.3d 486, 488 n.1 (noting that questions regarding sovereign immunity are analyzed under Rule 12(b)(1) unless "the existence of subject matter jurisdiction is inextricably intertwined with material facts affecting the merits of the claim" in which the Rule 56 standard may be more appropriate).

While seeking prospective injunctive relief under § 1983 against state actors to comply with federal law is a notable exception to the sovereign immunity doctrine, that type of relief is jurisdictionally unavailable here because of Ms. Vaughn's non-student status. In particular, this court lacks subject matter jurisdiction over this part of Ms. Vaughn's lawsuit because of mootness. The court's mootness determination

10

is driven by the Eleventh Circuit's binding decision in *Adler v. Duval County School Bd.*, 112 F.3d 1475 (11th Cir. 1997).[2] *Adler* similarly dealt with claims asserted by former students who had since graduated from the defendant county school system. 112 F.3d at 1477.

As the *Adler* panel explained:

> We begin by noting that appellants' claims for declaratory and injunctive relief are moot. All appellants have graduated, and none are threatened with harm from possible prayers in future Duval County graduation ceremonies. In short, the appellants have no legally cognizable need for relief declaring the policy unconstitutional and preventing the School Board from allowing prayers at future graduations. . . .

> To apply the doctrine of mootness to this case, we must distinguish the appellants' claims for equitable relief from their claim for money damages. Although neither the appellants nor the district court treated the appellants' claim for damages as distinct from their claims for equitable relief, these claims are distinct by nature. Equitable relief is a prospective remedy, intended to prevent future injuries. In contrast, a claim for money damages looks back in time and is intended to redress a past injury.

> Frequently, a plaintiff will seek both forms of relief in the same cause of action when challenging a defendant's course of conduct that began before the initiation of the lawsuit and is likely to continue in the future. The plaintiff requests money damages to redress injuries caused by the defendant's past conduct and seeks equitable relief to prevent the defendant's future conduct from causing future injury.

---

[2]   Additionally, as Defendants point out, Ms. Vaughn "offers no rebuttal and therefore concedes that [certain of] her claims are moot." (Doc. 13 at 3).

> When the threat of future harm dissipates, the plaintiff's claims
> for equitable relief become moot because the plaintiff no longer needs
> protection from future injury. This is precisely what happened in this
> case.

*Adler*, 112 F.3d at 1477-78 (emphasis added).

Thus, akin to *Adler*, because Ms. Vaughn "no longer needs protection from future injury" as a student at JSU, her efforts to obtain Fourteenth Amendment-based and forward-looking equitable relief under § 1983 have become moot.[3] Consequently, that remaining portion of her § 1983 count is also **DISMISSED WITHOUT PREJUDICE**.

### C.   The Equitable Relief Portion of Ms. Vaughn's Title IX Count Is Due To Be Dismissed.

Mootness, as analyzed in *Adler*, similarly requires a dismissal of Ms. Vaughn's equitable relief premised upon Title IX as she no longer attends JSU. Consequently, that part of her Title IX count is likewise **DISMISSED WITHOUT PREJUDICE**.

However, as *Adler* clarifies, mootness does not preclude Ms. Vaughn from seeking compensatory damages for any viable Title IX claim that she has. *See Adler*, 112 F.3d at 1478 ("Because the appellants' claim for money damages does not depend on any threat of future harm, this claim remains a live controversy." (citing

---

[3] To the extent that Ms. Vaughn has suggested in her opposition brief that injunctive relief in the form of a correction of her educational record at JSU is still viable (Doc. 12 at 5-6), her complaint does not include this as an item of injunctive relief being sought.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371, 102 S. Ct. 1114, 1120, 71 L. Ed.

2d 214 (1982))).

Neither do the doctrines of sovereign immunity, *see Williams v. Bd. of Regents*

*to Univ. of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007) ("Williams correctly notes that

Congress validly abrogated the states' immunity from Title IX suits." (citing *Gebser*

*v. Lago Vista Independent School Dist.*, 524 U.S. 274, 284, 118 S. Ct. 1989, 1996,

141 L. Ed. 2d 277 (1998))), and standing preclude Ms. Vaughn from seeking a

monetary award for her "psychological [harm] and emotional distress" (Doc. 1 at 17

¶ B) caused by a Title IX violation.

Additionally, *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir.

2007), confirms that compensatory damages are recoverable under Title IX. *See*

*Sheely*, 505 F.3d at 1195 ("On review, however, all nine Justices of the Supreme

Court agreed that "a damages remedy" is indeed available under Title IX, and

reversed." (citing *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76, 112

S. Ct. 1028, 1038, 117 L. Ed. 2d 208 (1992))); *cf. also Sheely*, 505 F.3d at 1204

(holding that "emotional damages are available to make whole the victims of

violations of § 504 of the Rehabilitation Act" [and by analogy to victims of Title IX

violations too] because "[w]hen an entity accepts funding from the federal

government," it agrees not to discriminate and "[a] foreseeable consequence of

13

discrimination is emotional distress to the victim"). Therefore, because Ms. Vaughn is seeking a compensatory damages award in addition to equitable relief, the Motion is **DENIED** to the extent it seeks a complete dismissal of Ms. Vaughn's Title IX count.

### D.   The Court Will Require Ms. Vaughn To Replead Her Complaint.

Here, Defendants are correct that Ms. Vaughn's complaint fails to satisfy the pleading requirements of *Twombly* and *Iqbal*. However, rather than an outright dismissal of her case, the court concludes that the more appropriate relief in this instance is to give Ms. Vaughn the opportunity to replead. However, this repleader is limited to her Title IX claims that are plausible under federal law.

In repleading, Ms. Vaughn must draft a much more definite and comprehendible pleading that is consistent with all of the above rulings that have dismissed various portions of her complaint on jurisdictional grounds. To the extent that she has facts to support a plausible Title IX retaliation claim in addition to a gender-based one, then she should allege each Title IX cause of action in a separately numbered count. Additionally, Ms. Vaughn should not include any individuals as defendants in any repleaded Title IX count, as "[i]ndividual school officials . . . may not be held liable under Title IX." *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir.

14

1999) (citing *Floyd v. Waiters*, 133 F.3d 786, 789 (11th Cir.) ("[A] Title IX claim can only be brought against a grant recipient—that is, a local school district—and not an individual.") (citations and quotations omitted), *vacated*, 525 U.S. 802, 119 S. Ct. 33, 142 L. Ed. 2d 25 (1998), *reinstated*, 171 F.3d 1264 (11th Cir. 1999)).

Further, in her replacement pleading, Ms. Vaughn must break down each one of her claims into its requisite elements and connect those elements to those facts which she in good faith alleges took place and which plausibly support why Defendant JSU is potentially liable to her under that specific claim. If Ms. Vaughn lacks facts to plausibly support every required element of a claim, then she must omit that claim from her replacement pleading.

The deadline for Ms. Vaughn to replead her amended complaint is **on or before August 14, 2015**.[4] **The court cautions Ms. Vaughn that the failure to replead her complaint in an acceptable manner that comports with the Federal Rules of Civil Procedure as required by this order may result in a dismissal of her entire case with prejudice for the failure to prosecute**.

## IV. Conclusion

Accordingly, for the reasons explained above, the Motion **GRANTED IN**

---

[4] The deadline to answer or otherwise respond to such amended complaint shall be twenty (20) days after such amended complaint is received.

**PART**, **DENIED IN PART**, and otherwise **TERMED** as **MOOT**.

      **DONE** and **ORDERED** this 24th day of July, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

16